UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Ashland)

| | | |
|---|---|---|
| PATRICIA LYNN CONN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:19-CV-107-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| | | |
| Defendant. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross-motions for Summary Judgment [R. 18, 22]. The

Plaintiff, Patricia Lynn Conn, exhausted her administrative remedies and brought this action

under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her

claim for supplemental security income benefits (SSI). The Court, having reviewed the record

and the parties' motions, will affirm the Commissioner's decision.

I.      **Procedural and Factual Background**

On October 31, 2016, Conn filed an application for SSI benefits, alleging she became

disabled in March 2015. [Administrative Record (AR) 21, 156, 195] Her application was initially

denied and again on reconsideration, after which she requested a hearing before an

Administrative Law Judge (ALJ). [AR 21, 170, 193] The ALJ held a hearing on October 18,

2018 [AR 121-31] and subsequently issued an unfavorable decision on November 29, 2018,

finding Conn was not disabled since March 23, 2015 [AR 20-36]. The Appeals Council denied

her request for review [AR 1-4] and the ALJ's decision became the final decision of the

Commissioner. Conn then filed her Complaint against the Commissioner in this Court. [R. 1]

## II.     Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether it

is supported by "substantial evidence" and made in accordance with proper legal standards.

*Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip*

*v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).  "The substantial

evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to

support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)

(internal quotations omitted).  "Substantiality must also be based on the record 'as a whole.'"

*Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v.*

*Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the

record that would have supported an opposite conclusion, so long as substantial evidence

supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's

decision.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v.*

*Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This Court cannot review the case de novo,

resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

To determine disability under the Social Security Act, the ALJ must conduct a five-step

analysis. 20 C.F.R. § 416.920.

1.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.

2.  Second, plaintiff must show that she suffers from a "severe impairment" to warrant a finding of disability.

3.  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment

> meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

## III.   Analysis

The ALJ followed the five-step evaluation process as required by SSA regulations. [AR 21-36]. At step one, the ALJ found Conn had not engaged in substantial gainful activity since March 23, 2015. [AR 23] At step two, the ALJ found Conn had various "severe" impairments; most relevant here, she found generalized anxiety disorder, unspecified bipolar disorder, and unspecified anxiety disorder, among other severe physical impairments. [*Id.*] At step three, the ALJ determined Conn did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. [AR 24-25] Although at step three the ALJ was not making a "residual functional capacity" (RFC)[1] assessment, the ALJ did discuss in great detail Conn's mental impairments and the evidence in the record that supported and detracted from her claim that her mental impairments caused her to be disabled. [AR 25-27] The ALJ proceeded to step four and determined Conn's RFC, finding that she could perform "medium work," with the following limitations:

> [S]he can stand and walk for six hours. She can sit for six hours. She can occasionally stoop, crouch, kneel, and crawl. She can occasionally climb stairs and ramps, but cannot climb ladders, ropes, or scaffolds. She needs to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants, and vibration. She can perform simple, routine, repetitive work that involves occasional changes and she can occasionally interact with coworkers and the public.

---

[1] An individual's residual functional capacity is the most an individual can still do despite his or her impairment-related limitations. 20 C.F.R. § 416.945 (a)(1).

[AR 28]

Based on this RFC and the testimony of a vocational expert, the ALJ determined that

Conn could not perform any of her past work but could perform other jobs existing in significant

numbers in the national economy; therefore, Conn was "not disabled." [AR 135-36]

On appeal, Cone makes four arguments, asserting that: 1) the ALJ erred when she

disregarded the opinion of psychological consultative examiner Dr. Brittainy Q. Shaw that

supported Conn's claim of disability; 2) the ALJ erred when she "adopted" the limitations

assessed by non-examiner Dr. Thompson Prout who only had a "skeleton" portion of the medical

record to review; 3) the ALJ's RFC assessment failed to consider Conn's new impairments; and

4) the ALJ erred in accepting the vocational expert's testimony that Conn would perform certain

occupations categorized as "medium work," but Conn's individualized RFC is partly inconsistent

with the agency's definition of "medium work." [R. 18-1] The Court will address each argument

in turn.

### A. Dr. Shaw's Consultative Examination

In December 2016, Dr. Shaw performed a consultative examination of Conn. [AR 704-

09] Dr. Shaw made findings, documented Conn's reports concerning her various impairments,

and submitted an opinion on Conn's limitations. [*Id.*] She diagnosed Conn with unspecified

bipolar disorder and unspecified anxiety disorder. [AR 706] Dr. Shaw's opinion (her "medical

source statement") concluded that Conn had "moderate to marked limitations" in her "capacity to

understand, remember, and carry out instructions toward performance of simple repetitive tasks;"

she had "marked limitations" in her "ability to tolerate stress and pressure of day-to-day

employment" and "to sustain attention and concentration towards performance of simple,

repetitive tasks;" and "extreme limitations" in her "capacity to respond [] appropriately to

supervision, co-workers, and work pressures in a work setting." [AR 707] Nevertheless, the ALJ

gave Dr. Shaw's report and opinion only "some weight," and ultimately concluded that Dr.

Shaw's conclusions were "significantly inconsistent" with the medical evidence in the record.

[AR 34]

      Under SSA regulations, an ALJ must "evaluate every medical opinion [she] receive[s],"

she must consider the opinion "together with the rest of the relevant evidence" in the record, and

(unless the ALJ gives a treating source's[2] medical opinion "controlling weight") the ALJ must

consider certain factors in deciding the weight given to a medical opinion, including opinions

from non-treating sources. 20 C.F.R. § 416.927(b), (c). Those factors include: 1) whether the

opinion is based on an examining relationship; 2) the supportability of the medical opinion such

as medical signs and laboratory findings in the record and the explanation given for the opinion;

3) the consistency of the medical opinion with the record as a whole; and 4) the specialization of

the medical source and whether the opinion is on issues in her area of specialty. § 416.927(c)(1),

(3)-(5); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (explaining an ALJ

weighs medical opinions "based on the examining relationship (or lack thereof), specialization,

consistency, and supportability.")

      In her decision, the ALJ thoroughly discussed Dr. Shaw's examination, applied the

factors outlined in the regulations, compared Dr. Shaw's opinion and findings with other relevant

evidence in the record, identified inconsistencies, and concluded that Dr. Shaw's opinion

warranted only "some weight." [AR 32] That is all the ALJ was required to do. And although an

---

[2] A "treating source" or "treating physician" is a claimant's "own acceptable medical source who provides [her] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [her]." 20 C.F.R. § 416.927(a)(2). Neither party alleges that Dr. Shaw was a treating source; rather, she was a one-time examiner hired by the agency to create a consultative psychological report.

ALJ is not required to engage in an "exhaustive factor-by-factor analysis," the ALJ came close. *Francis v. Comm'r Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

The ALJ noted that the "significant psychiatric symptoms" Conn reported to Dr. Shaw were "not consistent with her ongoing reports to her treating providers or with her reported activities." [*Id.*] The ALJ noted that Dr. Shaw's findings stand alone and "are not repeated by any treating provider." [*Id.*] For instance, "[i]n contrast to [Dr. Shaw's] psychiatric consultative examination," Conn had "no serious complaints or objective findings at her routine" follow-up appointments with Ms. Marianne Edwards, ARNP that occurred in November 2016 and in February 2017, respectively about a month before and two months after Dr. Shaw's exam. [AR 769-74] The ALJ cited to specific notes from the November 2016 and February 2017 appointments that were inconsistent with Dr. Shaw's conclusions, such as Conn presenting with a "stable mood," her sleep was "not generally disrupted," and her medication was "effective without side effects." [AR 32] Additionally, the ALJ explained that Conn's "mental status examination[s]" in November 2016 and February 2017 were "unremarkable," apart from only "adequate" attention and concentration. [AR 32; 769-71] Conn's mental status exams were indeed normal: In November 2016 Ms. Edwards indicated that Conn had no hallucinations, delusions, suicidal ideation, or obsessive thoughts, had "good" judgment and insight, "congruent" mood and affect, her status was "improving," and no changes were made to her medication. [AR 769-71] In February 2017, Ms. Edwards stated that Conn reported "increased irritability, 'on edge,' [and] depressed without suicidal ideation," but otherwise made identical findings to those made in November 2016, except that Conn's judgment and insight were now "fair" and her status was "no change," rather than improving. [AR 772-74] The ALJ also cited to appointment notes from May 2017 (about 5 months after Dr. Shaw's exam) where Ms. Edwards

6

noted that Conn reported "depression, anhedonia, [and being] generally unhappy with her life," but otherwise her mental status exam was normal, with "fair" judgment and insight, "good" attention and concentration, and no change in her overall status. [AR 1199-1201] In November 2017, Ms. Edwards noted that Conn "reports stable mood, doing well on current medication, denied psychosis or depression, though increased anxiety. Eating and sleeping well. No side effects." [AR 1222]

In weighing Dr. Shaw's opinion, the ALJ explicitly noted that Dr. Shaw did not have an ongoing treating relationship with Conn, and "although Dr. Shaw performed a detailed evaluation, there was only a vague assessment of the claimant's work limitations." [AR 34] Additionally, the ALJ concluded that Conn's condition during Dr. Shaw's exam was "significantly inconsistent with the reports of her treating mental health providers and her improvement with treatment," as already discussed. [AR 35] The ALJ noted that Conn did not "have any serious ongoing difficulties with memory, understanding, or concentration" and that Dr. Shaw's opined limitations were "inconsistent with [Conn's] reported activities," such as "living alone, caring for family members, doing household chores, and shopping in public." [*Id.*]

The ALJ also thoroughly detailed the inconsistencies between Dr. Shaw's opinion and the medical evidence under step three as well. [AR 25-27] For example, in contrast to Dr. Shaw's report, the ALJ noted Conn has not been "observed to have significant objective difficulty with memory or to be confused;" she has been "typically observed to have intact associations and fair to good judgment and insight in her ongoing mental health treatment;" and the record does not document any "ongoing difficulty asking and answering questions or explaining herself." [AR 26-27] She has had "generally conservative and typically infrequent treatment" for her mental impairments. [AR 26] Other than her reported abusive relationship and

problems with her siblings, Conn "did not otherwise make ongoing complaints of serious difficulty engaging in social activities" and has not been "observed to exhibit excessive irritability, sensitivity, argumentativeness, or suspiciousness." [*Id.*] Conn reported to Dr. Shaw that she asked others to do her grocery shopping, but at the hearing before the ALJ she testified that she did her own grocery shopping. [*Id.*; AR 121-22] In contrast to Dr. Shaw's opinion that Conn was extremely limited in her ability to respond appropriately to supervisors and co-workers, the ALJ noted she was "often noted to have good eye contact" and "often observed to be cooperative, and at times to be friendly, courteous, or pleasant." [AR 26] The ALJ noted that Dr. Shaw's "finding of variable attention and concentration" was "inconsistent with the overall record," because Conn's "treating providers observed her to be distractible on only a single occasion, after a break in treatment of several months" and "[i]n her ongoing mental health treatment, [Conn] was observed to have adequate or good attention and concentration." [*Id.*] Lastly, although Dr. Shaw observed Conn to be "disheveled," the ALJ noted that "in her ongoing treatment records, she was observed to have good hygiene and to be well groomed or neat." [AR 27] These numerous examples, among others detailed by the ALJ in her decision, are certainly enough to support the ALJ's decision to give limited weight to Dr. Shaw's opinion. Therefore, the Court finds that the ALJ's decision was supported by substantial evidence.

Conn cites to *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048 (6th Cir. 1983) for the proposition that an ALJ "cannot disregard opinions of a consulting physician which are favorable to a claimant." [R. 18-1 at 2] This supposed rule is not supported by *Lashley*. The Sixth Circuit in *Lashley* held that an ALJ has a duty to "fully develop the record" and provide a claimant with a "full and fair hearing," particularly when the claimant is without counsel. *Lashley*, 708 F.2d at 1051-52. Conn does not contend that the ALJ failed to do so here. However,

the Court in *Lashley* also noted that, in that particular case, the ALJ's reliance on the opinion of

single consultative examiner was "misplaced" when three other consultative examiners' opinions

supported the claimant's testimony regarding his mental limitations. *Id.* at 1054 The Court found

the ALJ's dismissal of the claimant's testimony to be "particularly disturbing when it is

corroborated by the reports of physicians the Secretary has selected." *Id.* This language does not

create the bright line rule Conn suggests, and the holding of *Lashley* is otherwise inapplicable.

Conn also argues that the ALJ's finding that her condition had improved with treatment

was not supported by the evidence. She specifically points to evidence of a four-day medical stay

at Pathways Crisis Unit in July 2017, months after Dr. Shaw's exam, as evidence of her

deterioration and lack of improvement. [R. 18-1 at 4] The ALJ considered this evidence and

decided that it did not reflect Conn's overall mental state but was an isolated event. Specifically,

the ALJ found that throughout 2017, Conn had "generally routine and conservative treatment

with some improvement," with the exception of "one brief exacerbation, in July 2017, following

the loss of her mother." [AR 31] The ALJ noted this brief deterioration in Conn's mental health

occurred shortly after the death of her mother and that the medical records from her July 2017

hospitalization also show that Conn was "requesting assistance due to reported financial need

and homelessness." [AR 32] Then, at a medical appointment in August 2017—less than a month

after her discharge from Pathways Crisis Unit—Conn's ARNP (Ms. Edwards) noted Conn

reported "a lot of stress, increased anxiety, but feels medication is helping some," but otherwise

her mental status exam was normal. [AR 1215-17] She had no hallucinations, delusions, suicidal

ideation, violent ideation, or obsessive thoughts; her judgment and insight were "fair," her

attention and concentration were "good," and her status was "improving." [*Id.*] A few months

later, in November 2017, Ms. Edwards noted that Conn "reports stable mood, doing well on

current medication, denied psychosis or depression, though increased anxiety. Eating and sleeping well. No side effects." [AR 1222] The ALJ discussed this evidence and it provides substantial evidence to support the ALJ's determination that the July 2017 four-day medical stay was an aberration rather than reflective of Conn's ongoing mental status.

Lastly, Conn cites extensively to evidence in the record that shows Conn's ongoing struggles with depression, anxiety, and other mental health problems throughout 2018. [R. 18-1 at 4-5] Neither the ALJ nor the Court has any doubt that Conn has struggled with her mental health. However, the ALJ discussed and cited to these same medical records and noted that, although Conn "reported some fluctuating psychiatric symptoms," "these were often related to her relationship problems and family issues, and there were no serious ongoing objective findings." [AR 32] In other words, the ALJ found her mental health challenges to be situational and not disabling. The ALJ considered and specifically discussed medical records from January, February, March, April, May, June, and August of 2018 and cited to specific evidence in these records that supports the ALJ's conclusion. [AR 32-33] For example, in January 2018, Conn reported improvement and "expressed interest in advertising her availability to clean houses and indicated she would like to meet new positive people." [AR 32; 1233] In April, June, and September 2018 she reported that her medication was working and helping with her condition. [AR 32-33] Thus, while the documentation cited by Conn could possibly "support[] an opposite conclusion [from the ALJ's], so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The Court finds that substantial evidence supports the ALJ's conclusion.

**B. Dr. Prout's Findings**

Conn also argues that the "ALJ erred in accepting Dr. Prout's findings because his opinion is not based upon all the medical evidence." [R. 18-1 at 6] Specifically, Conn argues that when Dr. Prout reviewed Conn's medical records in December 2016, he only had a "skeleton portion" of the record and thus it was error for the ALJ to rely on Dr. Prout's assessment. [*Id.* at 7]

The ALJ did not wholesale "adopt" Dr. Prout's findings or give his assessment controlling or even great weight, as Conn suggests. Rather, the ALJ explained that because Dr. Prout and the other consultative psychologists were "not examining sources" and "a significant portion of the record was subsequently received," their assessments warranted only "some weight." [AR 33] Therefore, the problems with Dr. Prout's assessment raised by Conn on appeal were explicitly noted by the ALJ and incorporated into the weight given to his report.[3]

Conn also points to Dr. Brake, another state agency psychologist who reviewed Conn's medical records at the reconsideration level[4] a few months after Dr. Prout's review, in February 2017. [AR 186, 191] Conn asserts that Dr. Brake reviewed new evidence and "found additional restrictions" in Conn's RFC. [R. 18-1 at 8] However, Dr. Brake did not find additional restrictions. Rather, she noted that, on reconsideration, "additional evidence [was] received and

---

[3] Conn also cites to *Barker v. Shalala*, 40 F.3d 789 (6th Cir. 1994) to argue that the ALJ could only reject an examiner's (Dr. Shaw's) assessment in favor of a non-examiner's (Dr. Prout's) if the non-examiner "had access to the entire medical records and . . . observed the claimant during an administrative hearing." [R. 18-1 at 7] Again, the ALJ did not wholly reject Dr. Shaw's assessment and adopt Dr. Prout's. Rather, she gave Dr. Prout's report only "some weight," and did not otherwise cite to or rely on his report to support her RFC finding. Furthermore, *Barker* does not establish the rule proposed by Conn. The Sixth Circuit in *Barker* simply noted that the "ALJ was entitled to accept [the non-examiner's] evaluation . . . in preference to [the examiner's]," in part because the non-examiner "had access to the entire medical record in the case" and the examiner "worked only from her personal examination of [claimant]." *Id.* at 794. The Court never stated or suggested that only under those circumstances could an ALJ accept a non-examiner's assessment over an examiner's. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("Any record opinion . . . may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record.").

[4] Dr. Prout reviewed Conn's medical records at the "initial level," [AR 154], and adopted the mental RFC assessed by an ALJ from a previous unfavorable decision. [AR 168]

reviewed," and the new evidence "indicates that [Conn] remains essentially similar to that at the initial level." [AR 191][5] Dr. Brake's assessment of Conn's mental RFC was not meaningfully different from Dr. Prout's, and Conn's argument otherwise is without merit. Lastly, the ALJ considered and gave Dr. Brake's findings only "some weight" because, like Dr. Prout, Dr. Brake was not an examining source and significant portions of the record post-dated Dr. Brake's review as well. [AR 33 (citing Exhibit D5A)]

### C. The ALJ's RFC assessment and Conn's new impairments

Conn's third argument is that the ALJ failed to considered Conn's "new impairments" when determining her mental RFC and, as a result, failed to accurately describe her to the vocational expert during the ALJ hearing. [R. 18-1 at 8-9]

In March 2015, a different ALJ (Judge Meade) considered a prior application for benefits filed by Conn and, after holding a hearing and reviewing the record, found that Conn was not disabled. [AR 132-47] ALJ Meade also found that Conn had the following severe mental impairments at that time: bipolar disorder and borderline intellectual functioning. [AR 138] With respect to Conn's mental RFC, he determined that she was "limited to simple, routine tasks," but was "able to handle occasional changes in the work setting [and] can occasionally interact with the public and co-workers." [AR 141]

The ALJ in this case found different severe mental impairments, specifically: generalized anxiety disorder, unspecified bipolar disorder, and unspecified anxiety disorder. [AR 23] Nevertheless, the ALJ determined that Conn's mental RFC was essentially identical to the one made by ALJ Meade—that Conn can perform simple, routine, repetitive work that involves occasional changes and she can occasionally interact with coworkers and the public. [AR 28]

---

[5] Dr. Brake also noted that Dr. Prout's mental RFC at the initial level could not be "affirmed" because of changes in SSA policy. [AR 191]

Similarly, ALJ Meade had found only "mild" restrictions in activities of daily living, "moderate" difficulties in social functioning, concentration, persistence, and pace, and no episodes of decompensation. [AR 140] In contrast, the present ALJ used updated criteria[6] and found Conn had "moderate" limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. [AR 26-27]

Therefore, Conn argues, the ALJ here could not permissibly come to the same mental RFC as the previous ALJ because the two made different findings. Despite Conn's argument, all an ALJ is required to do is consider the evidence in a subsequent application and make her own determination about a claimant's limitations. *Goins v. Saul*, No. CV 19-117-DLB, 2020 WL 1290784, at *2 (E.D. Ky. Mar. 18, 2020). The ALJ did so here. Although Conn may be correct that the ALJ should *consider* additional mental limitations based on finding different impairments or marginally greater limitations, Conn has not shown that the ALJ failed to do so. Rather, in discussing the evidence for Conn's RFC, the ALJ clearly considered Conn's mental impairments, including her "symptoms of anxiety and depression," which allegedly "caused difficulty with concentration or being around crowds." [AR 28] The ALJ then proceeded to comprehensively discuss the medical evidence and explain why the record did not support the alleged limitations that Conn claimed her mental impairments imposed on her abilities. [AR 28-33] The ALJ clearly considered this evidence and concluded that a more restricted mental RFC was not warranted. Further, Conn has not shown the ALJ was required to arrive at a different mental RFC from the prior ALJ; rather, the ALJ's conclusion clearly falls within the "zone of

---

[6] In January 2017 new "paragraph B" criteria went into effect, removing activities of daily living, social functioning, and episodes of decompensation as criteria and replacing those with the ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *See* 81 Fed. Reg. 66,137 (Sept. 26, 2016) (effective date January 17, 2017).

13

choice" afforded by the substantial evidence standard. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604–05 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

Conn also briefly argues that the "ALJ erred in failing to include the borderline intellectual functioning" impairment that ALJ Meade had found, at step two. [R. 18-1 at 9] However, the ALJ was not bound by ALJ Meade's findings and, based on the new and additional evidence in the record, the ALJ made independent findings on which severe mental impairments Conn had. *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018) (explaining that a second ALJ is not bound by a prior ALJ's findings when there is "new and additional evidence."). So long as the ALJ performed a "fresh review" of Conn's second application— which the Court finds she did— and her conclusions are supported by substantial evidence, the Court will not second guess the ALJ's conclusions.[7] *Id.*

### D. Vocational expert's testimony

Lastly, Conn argues that the ALJ erred in accepting the vocational expert's testimony which was based on a definition of "medium work" that was inconsistent with the agency's definition of "medium work." [R. 18-1 at 10-11] Specifically, Conn disputes the ALJ's described hypothetical individual who could "occasionally stoop, crouch, kneel, and crawl," and the vocational expert's response that such a person could perform various occupations, all categorized at the "medium exertional level." [AR 128] Conn claims that Social Security Ruling (SSR) 85-15 defines medium work to include the ability to "frequently" bend, stoop, and crouch.

---

[7] The ALJ explicitly discussed ALJ Meade's prior decision, noted that new evidence had been received since his decision in 2015, and explained that she reviewed the complete record in determining Conn's RFC. [AR 33 ("The undersigned has considered the complete record, noting there has been a substantial amount of additional evidence submitted since the prior ALJ unfavorable decision and more than three years have passed since the date of the prior decision.")]

Thus, according to Conn, the vocational expert's testimony was inconsistent with SSA's regulations. [R. 18-1 at 10] However, SSR 85-15 states:

> If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. However, because of the lifting require[d] for most medium . . . jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base. This is also true for crouching (bending the body downward and forward by bending both the legs and spine).

SSR 85-15, 1985 WL 56857, at *7. This Social Security Ruling simply explains that most medium jobs require the ability to stoop or crouch frequently, and an inability to do so would erode part of the "occupational base." *Id.* The ALJ recognized this and explained in her decision that Conn's "ability to perform all or substantially all of the requirements of this [medium] level of work has been impeded by additional limitations," (i.e., her inability to stoop or crouch frequently), therefore, to "determine the extent to which these limitations erode the unskilled medium occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." [AR 35-36] This line of questioning to the vocational expert is in accordance with SSR 83-12, which provides, "[w]here the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource. . . . Vocational experts may testify for this purpose at the hearing." SSR 83-12, 1983 WL 31253. The vocational expert did indeed testify for this purpose and, given Conn's RFC, testified Conn would still be able to perform certain representative occupations, such as linen room attendant, dining room attendant, hand packager, or laundry worker, even though these are generally categorized as "medium work." [AR 36] The Court finds that the ALJ's questioning and the vocational expert's testimony was consistent with SSA regulations and Conn's argument otherwise is without merit.

Therefore, based on the Court's review of the ALJ's decision and administrative record, the Court finds the decision is supported by substantial evidence and was made in accordance with proper legal standards. *Rabbers*, 582 F.3d at 651. The Court will grant the Commissioner's Motion for Summary Judgment.

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1. The Plaintiff's Motion for Summary Judgment [**R. 18**] is **DENIED**.

2. The Commissioner's Motion for Summary Judgment [**R. 22**] is **GRANTED**.

3. The decision of the Commissioner is **AFFIRMED**.

4. A judgment will be entered contemporaneously with this Order.

This the 27th day of January, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY